UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELEANOR HEALD, et al.

    *Plaintiffs*

  vs.

JENNIFER M. GRANHOLM et al.

    *Defendants*

MICHIGAN WINE & BEER WHOLESALERS
ASSOCIATION
    *Intervening Defendants*
_____/

Civil No. 2:00-cv-71438-BAF

Bernard A. Friedman
United State District Judge

Marc L. Goldman
Magistrate Judge

## PLAINTIFFS' SECOND MOTION FOR ATTORNEYS' FEES

Robert D. Epstein (6726-49)
Epstein Cohen Donahoe & Mendes
30 S. Meridian St., Ste 505
Indianapolis IN 46204
(317) 639-1326

James A. Tanford (16982-53)
Indiana University School of Law
211 S. Indiana Av
Bloomington IN 47405
(812) 855-4846

David Whitaker (P40299)
3940 Audubon Rd
Detroit MI  48224
(313) 224-4684

*Attorneys for Plaintiffs*_____/

Michael Lockman
Donald S. McGehee
Michigan Dept. of Attorney General
P.O. Box 30005, Lansing MI 48909
(517) 322-1367
*Attorney for Defendants*

Anthony S. Kogut (P31697)
Raymond J. Foresman, Jr. (P13574)
Willingham & Cote, P.C.
P.O. Box  1070
East Lansing MI 48826
(517) 351-6200
*Attorneys for Intervening Defendant*

Come now the Plaintiffs by counsel, and move this court pursuant to Fed.R.Civ.P. 54(d) and 42 U.S.C. § 1988, for an order awarding them attorneys' fees as prevailing parties for the reasons and in the amounts as follows:

1.  Plaintiffs filed this action on March 22, 2000 under 42 U.S.C. §1983 against state officials for declaratory and injunctive relief, challenging the constitutionality of a Michigan state law that prohibited direct interstate sales and shipments of wine to Michigan residents.  The complaint included a demand for attorney's fees pursuant to 42 U.S.C. §1988.

2.  On September 5, 2003, this court entered judgment in favor of Plaintiffs following a decision in Plaintiffs' favor by the Court of Appeals for the Sixth Circuit.  Plaintiffs filed a timely motion for attorneys' fees on September 17, 2003, which became moot when this court vacated its judgment on September 25, 2003, as premature because petitions for certiorari had been filed.

3.  On May 24, 2004, the Supreme Court granted certiorari, and by agreement of the parties, the question of attorneys' fees would be held in abeyance pending the decision of the Supreme Court.  This Court therefore denied the motion for fees without prejudice.

4.  On May 16, 2005, the Supreme Court ruled in favor of plaintiffs.

5.  On  November 3, 2005, the District Court entered an order and judgment in favor of plaintiffs and against Defendants on the declaratory and injunctive relief requested .

6.  Plaintiffs are prevailing parties pursuant to 42 U.S.C. § 1988.

7.  Plaintiffs employed two attorneys throughout this case:  Robert D. Epstein and James A.

Tanford.   They functioned as co-lead counsel.  Mr. Tanford was counsel of record in the Supreme Court.

8.   James A. Tanford spent 1046.2 hours in legal work on this case, for which Plaintiffs seek a reasonable base lodestar rate of $400.00 per hour, which total is $418,480.00.  In connection with that legal work, he has spent 133.9 hours in travel time, for which he seeks a reasonable fee of $100.00 per hour, which total is $13,390.00.  He also has incurred out-of-pocket expenses of $3128.40.  He has submitted an affidavit and contemporaneous time records which are attached to this motion as Exhibits 1-3.

9.   Robert D. Epstein spent 762.35 hours in legal work on this case, for which Plaintiffs seek a base lodestar rate of $400 per hour, which total is $304,940.00.  In connection with that legal work, he has spent 140.75 hours in travel, for which Plaintiffs seek reasonable attorneys fees of $100 per hour, for a total of $14,075.00.  He also has incurred out-of-pocket costs and expenses of $9459.00.  He has submitted an affidavit and contemporaneous time records which are attached to this motion as Exhibits 4-7.

10.   Plaintiffs employed several other attorneys at specific stages of the case.  David A. Whitaker served as local counsel in the District Court.  Jeffrey Marchal was Mr. Epstein's associate, and assisted him on preliminary matters.  Kenneth Starr, Kanon Shanmugam, Susan Engel, Steven Engel, and Jennifer Atkins, all of Kirkland & Ellis, prepared the Memorandum in Opposition to Certiorari and provided other assistance in preparing the brief on the merits in the Supreme Court.  Kathleen Sullivan presented the oral argument to the Supreme Court.

11.   David Whitaker served as local counsel.  He spent 51.2 hours in legal work on this

case when it was in the District Court, for which Plaintiffs seek reasonable attorney's fees of $300 per hour, for a subtotal of $15,360.   He incurred $167.68 in expenses directly connected to that legal work.  He has submitted an affidavit and contemporaneous time records which are attached to this motion as Exhibits 8-9.

12.  Jeffrey Marchal served as Robert Epstein's associate attorney.  He spent 11.3 hours in legal research on this case during the preliminary stage, for which Plaintiffs seek reasonable attorneys fees of $250 per hour, for a total of $ 2825.00.   He has submitted an affidavit and contemporaneous time records which are attached to this motion as Exhibits 10-11.

13.  Kathleen Sullivan presented the argument to the Supreme Court.  She spent 96.0 hours in legal work preparing for and presenting the that argument, for which Plaintiffs seek a base lodestar rate of $400 per hour, which total is $38,400.00 .   She has submitted an affidavit and contemporaneous time records which are attached to this motion as Exhibits 12-13.

14.  Kenneth Starr is a former Solicitor-General of the United States.  He was senior litigation partner at Kirkland & Ellis in Washington, D.C.   He and his associates spent 209.5 hours in legal work on this case assisting in the preparation of the briefs submitted to the Supreme Court.  Plaintiffs seek reasonable attorneys' fees of $500 per hour for Mr. Starr and $250.00 per hour for his associates.  They request compensation for 53.75 hours of Mr. Starr's time and 155.75 hours of his associates' time, which total is $65,812.50.   Plaintiffs have submitted contemporaneous time records from Kirkland & Ellis as Exhibit 15.  Those time records include both billable and non-billable time.  The explanation for which hours plaintiffs believe are compensable is in the Tanford Affidavit, Exhibit 1.

15.  Plaintiffs request attorneys' fees for a total of 2176.55 hours of legal work by all attorneys.  Those attorneys devoted approximately 160 hours to preliminary fact and legal investigation, 80 hours to discovery, 420 hours to ten pretrial motions including five dispositive motions, 300 hours to researching, briefing and arguing the case in the Sixth Circuit, 1100 hours for proceedings and argument in the Supreme Court, and 90 hours on negotiations with state officials and final proceedings in the District Court, all of which are explained in further detail in the accompanying brief.  The 2176.55 hours requested are the actual hours expended by the attorneys reduced by approximately 15% to account for duplication of efforts among the attorneys.  The detailed explanation of the hours written off in the exercise of billing judgment appears in the brief accompanying this motion.

16.  The base lodestar rates requested are reasonable.  The prevailing local rate for federal court litigation by attorneys with twenty-five years' experience is $300.00 to 500.00 per hour for lead counsel, $300.00 per hour for local counsel, and $250.00 per hour for associates, as demonstrated by affidavits from several experienced litigation attorneys in the Detroit area, attached to this motion as Exhibits 16 through 22.

17.  Plaintiffs further request that the court enhance the base lodestar rate by a factor of 1.5 for Mr. Epstein, Prof. Tanford, Dean Sullivan, and Dean Starr, who prepared, litigated, briefed, and argued this case.  This is a rare and unique case that resulted in a new Supreme Court precedent that has fundamentally changed the law and benefitted more than 2500 wineries and millions of wine consumers.   This request is supported by an affidavit from Sheldon Miller, a leading Detroit-area litigator (Exhibit 22), and an affidavit from James Seff, one of the nations'

leading wine law experts (Exhibit 23).

18.  Plaintiffs have presented their fee request and hourly time records to the attorneys for

the Defendants, explained the nature of the motion and its legal basis, supplied all parties with

copies of the brief in support of the motion for attorneys' fees, and requested but did not obtain

concurrence in the relief sought.

WHEREFORE, Plaintiffs request that this Court award them  $1,280,386.00 in attorneys'

fees and expenses incurred as of this date, and for all other just and proper relief.

Respectfully submitted:

Dated: December 8, 2005           Attorneys for Plaintiffs

 /s/  **James A. Tanford**                       
James A. Tanford (16982-53)
Indiana University School of Law
211 S. Indiana Av
Bloomington IN 47405
(812) 855-4846

Robert D. Epstein (6726-49)
Epstein Cohen Donahoe & Mendes
30 S. Meridian St., Ste 505
Indianapolis IN 46204
(317) 639-1326

David D. Whitaker (P40299)
3940 Audubon Rd
Detroit MI  48224
(313) 224-4684

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ELEANOR HEALD, et al.

       *Plaintiffs*

    vs.

JENNIFER M. GRANHOLM et al.

       *Defendants*

MICHIGAN WINE & BEER WHOLESALERS
ASSOCIATION

       *Intervening Defendants*

Civil No. 2:00-cv-71438-BAF

Bernard A. Friedman
United State District Judge

Marc L. Goldman
Magistrate Judge

_____/

**PLAINTIFFS' BRIEF IN SUPPORT OF
SECOND MOTION FOR ATTORNEYS' FEES**

Robert D. Epstein (6726-49)
Epstein Cohen Donahoe & Mendes
30 S. Meridian St., Ste 505
Indianapolis IN 46204
(317) 639-1326

James A. Tanford (16982-53)
Indiana University School of Law
211 S. Indiana Av
Bloomington IN 47405
(812) 855-4846

David A. Whitaker (P40299)
3940 Audubon Rd
Detroit MI 48224
(313) 224-4684


*Attorneys for Plaintiffs*_____/

Donald S. McGehee
Michigan Dept. of Attorney General
P.O. Box 30005
Lansing MI 48909
(517) 322-1367
*Attorney for Defendants*

Anthony S. Kogut (P31697)
Raymond J. Foresman, Jr. (P13574)
Willingham & Cote, P.C.
P.O. Box 1070
East Lansing MI 48826
(517) 351-6200
*Attorneys for Intervening Defendant*

ISSUE PRESENTED

What is a reasonable amount of attorneys' fees to award Plaintiffs under 42 U.S.C. § 1988 as

prevailing parties in a civil rights case that went to the Supreme Court of the United States?

CONTROLLING AUTHORITY

1.  The attorney fee provision is contained in 42 U.S.C. § 1988.

2.  The leading Sixth Circuit case on the proper calculation of attorney fees is *Adcock-Ladd*

*v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000).

TABLE OF AUTHORITIES

CASES

*Adcock-Ladd v. Secretary of Treasury,* 227 F.3d 343 (6th Cir. 2000) . . . . . . . . . . . . . . . 13, 14, 16

*Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish* . . . . . . . . . . . . . . . . . 23
*School Bd.*, 919 F.2d 374 (5th Cir. 1990).

*Bainbridge v. Bush,* # 99-2681 (M.D. Fla) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . 13, 16, 19, 20

*Board of Trustees of the Hotel & Rest. Employees Local 25 v. JPR, Inc.,* . . . . . . . . . . . . . . . . . 15
136 F.3d 794 (D.C. Cir. 1998)

*Bridenbaugh v. Freeman-Wilson,* 227 F.3d 848 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Brotherton v. Cleveland,* 141 F. Supp. 2d 907 (S.D. Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . 20

*Building Service Local 47 Cleaning Contr. Pension Plan v. Grandview* . . . . . . . . . . . . . . . . . . 13
*Raceway,* 46 F.3d 1392 (6th Cir. 1995)

*Busche v. Burkee,* 649 F.2d 509 (7th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Carey v. Crescenzi*, 923 F.2d 18 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Charles v. Daley*, 846 F.2d 1057 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486 (9th Cir. 1983) . . . . . . . . . . . . . . . 24

*City of Burlington v. Dague,* 505 U.S. 557 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Cutner v. Newman*, 2:05cv03007 (E.D. Pa) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*DeJesus v. Banco Popular de P.R.*, 951 F.2d 3 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 24

*Dennis v. Higgins,* 498 U.S. 439 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Farrar v. Hobby,* 506 U.S. 103 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Guam Soc. Of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691 (9th Cir. 1996) . . . . . . . . 20

*Geier v. Sundquist,* 372 F.3d 784 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Glassroth v. Moore*, 347 F.3d 916 (11th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Glover v. Johnson*, 138 F.3d 229 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Haley v. Pataki, 106 F.3d 578 (2ⁿᵈ Cir. 1997)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hamlin v. Charter Township of Flint,* 165 F.3d 426 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hollowell v. Gravett,* 723 F. Supp. 107 (E.D. Ark. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Isabel v. City of Memphis*, 404 F.3d 404 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) . . . . . . . . . . . . . . . . 13

*Kelly v. Metropolitan Co. Bd. of Ed.*, 773 F.2d 677 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . 24

*McKenzie v. Kennickell,* 277 U.S. App. D.C. 297, 875 F.2d 330 (D.C. Cir. 1989) . . . . . . . . . 20

*Missouri v. Jenkins*, 491 U.S. 274 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pennsylvania v. Delaware Valley Cit. Council for Clean Air*, 478 U.S. 546 (1986) . . . . . . 12, 19

*Planned Parenthood of Central N.J. v. Attorney Gen.*, 297 F.3d 253 (3d Cir. 2002) . . . . . . . 23

*Praseuth v. Rubbermaid, Inc.,* 406 F.3d 1245 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 17

*Quinn v. Nassau County Police Dep't,* 75 F. Supp. 2d 74 (E.D. N.Y. 1999) . . . . . . . . . . . . . 20

*Robideau v. O'Brien*, 525 F.Supp. 878 (E.D.Mich.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Robins v. Scholastic Book Fairs*, 928 F.Supp. 1027 (D.Or.) *aff'd* 116 F.3d . . . . . . . . . . . . . . . 23
485 (1996)

*Rogers v. Kelly*, 886 F.2d 997 (8th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*S & R Wrecker Service, Inc. v. Mecklenburg County, N.C.*, 652 F.Supp. . . . . . . . . . . . . . . . . 22
527 (W.D.N.C.1987)

*Shakman v. Democratic Org.,* 677 F. Supp. 933 (N.D. Ill. 1987) . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Detroit Bd. of Ed.*, 728 F.2d 359 (6th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Stahl  v. Taft*, 2:03cv00597 (S.D. Ohio) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Stonington Vineyards v. Jenkins*, 1:05cv10982 (D. Mass) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Swedenburg v. Kelly*, 358 F.3d 223 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Walker v. U.S. Dept. of H.U.D.*, 99 F.3d 761 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 17

STATUTES & RULES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22, 24

Fed.R.Civ.P. 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. STATEMENT OF FACTS AND EXPLANATION OF HOURS SUBMITTED

Plaintiffs have submitted a fee request for a total of 2166.8 hours of legal work.  This total covers work done over six years by nine attorneys in a case that went to the United States Supreme Court.  Because of the length and complexity of this unique case, the number of attorneys who worked on parts of it, and the size of the fee request, plaintiffs believe that a detailed explanation of the case and the time devoted to it may be helpful.

The fee request is summarized as follows:

| | Hours worked | Base hourly rate | Sub total | Rate en-hanced by 1.5 multiplier | Travel at $100 per hr. | Expenses | Total |
|---|---|---|---|---|---|---|---|
| Tanford | 1046.2 | 400 | 418,480 | 627,720 | 13,390 | 3128 | 644,238 |
| Epstein | 762.35 | 400 | 304,940 | 457,410 | 14,075 | 9459 | 480,944 |
| Whitaker | 51.2 | 300 | 15,360 | | | 168 | 15,528 |
| Marchal | 11.3 | 250 | 2,825 | | | | 2,825 |
| Sullivan | 96.0 | 400 | 38,400 | 57,600 | | | 57,600 |
| Starr | 53.75 | 500 | 26,875 | 40,313 | | | 40,313 |
| Associates | 155.75 | 250 | 38,938 | | | | 38,938 |
| | | | | | | Total: | 1,280,386 |

Throughout the case, the lead attorneys were Robert D. Epstein and James A. Tanford. They had primary responsibility for all aspects of the case from its initiation through the briefing and argument in the Supreme Court.  The bulk of the fee request is therefore for their time.  Mr. Epstein asks to be compensated for 762.35 hours of legal work (Ex. 4, Epstein Aff. ¶¶ 9-14), and Prof. Tanford for 1046.2 hours. (Ex. 1, Tanford Aff ¶¶ 11-12, 21-22, 33).  Mr. Epstein is an

1

experienced litigator and an expert in the wine business.  He not only represents numerous wineries, but is also a wine professional who has organized and participated in national and international wine tastings.  He is the former wine critic for the Indianapolis Star.  He is personally acquainted with many winery owners across the United States. (Ex. 4, Epstein Aff. ¶¶ 1-6).  Prof. Tanford is also an experienced litigator and an expert in constitutional and civil rights litigation.  He is a law professor at Indiana University, has published textbooks on litigation, has taught a course in Constitutional litigation, and has been involved in numerous cases challenging the constitutionality of state laws and practices. (Ex. 1, Tanford Aff ¶¶ 1-14).

In 1998, Epstein and Tanford were approached by several potential clients who were interested in challenging laws that made it a crime for an out-of-state winery to sell or ship its wine directly to consumers.  These laws had been recently enacted in several states at the request of wine wholesalers.  The wholesalers benefitted from state-granted monopolies on the distribution of wine as a byproduct of the "three-tier" liquor distribution system widely adopted after the repeal of Prohibition.  The wholesalers feared competition and loss of business from Internet sales directly from wineries to consumers.  (Ex. 1, Tanford Aff ¶ 16).

Among the potential clients were wine journalists Russell Bridenbaugh from Indiana and Ray and Eleanor Heald from Michigan, Prof. Tanford's research assistant Scott Turner who was a former sommelier from North Carolina, and several friends of Mr. Epstein's from Florida where he maintains a second home.  (Ex. 1, Tanford Aff ¶ 17).

Plaintiffs' attorneys decided that the most likely ground for challenging these laws was that they discriminated against and burdened interstate commerce in violation of the dormant

Commerce Clause.  They determined that there was no clear Supreme Court precedent in this area and little relevant law from the Courts of Appeals.  They anticipated that the cases would not fare well in the lower courts because of the tradition that alcoholic beverages are heavily regulated, the usual deference given to state laws, the superficial appeal of claims that limiting direct shipping helps prevent youth access, and the inconsistent holdings of the few scattered Supreme Court cases on the balance between the Commerce Clause and the 21st Amendment. They felt that the only significant chance of obtaining a clear favorable decision was to get the case to the Supreme Court.  (Ex. 1, Tanford Aff ¶ 18).

In order to maximize the chances of getting this issue to the Supreme Court, plaintiffs' lead attorneys developed two strategies.  The first was to file four cases in four different federal circuits to maximize the chances of a split among the circuits that would have to be resolved by the Supreme Court.  The second was to file the cases seriatim rather than simultaneously, so they could see what kinds of arguments would be made against them, and then to use that information to craft subsequent cases in ways that anticipated the legal opposition.  They selected their home state, Indiana, as the first case, Florida the second, and Michigan and North Carolina as the final cases because their state laws were the ones determined to be most susceptible to constitutional challenge.  (Ex. 1, Tanford Aff ¶ 19).

The first case, *Bridenbaugh v. O'Bannon*, was filed in Indiana in late August 1998.  The second case, *Bainbridge v. Bush*, was filed in Florida in November 1999.  This case was filed in March, 2000, and the final case, *Beskind v. Easley*, in North Carolina in June, 2000.  It was anticipated that one of these two final cases would be the one that would go to the Supreme

Court.  (Ex. 1, Tanford Aff ¶ 20).

Because this case was coordinated with three others, it has not always been possible to separate out the hours spent in basic constitutional research and Supreme Court strategy and assign them separately to each of the four cases.  Where such separation is not possible, plaintiffs have assigned a percentage to this case and written off the rest as billable to the other cases. Because this case is the one that actually went to the Supreme Court, plaintiffs have assigned 50% of the time specifically devoted to Supreme Court strategy to this case; otherwise they have assigned percentages according to how many cases the work was relevant to.  (Ex. 1, Tanford Aff ¶ 21; Ex. 4, Epstein Aff. ¶ 5).  This common time includes:

a)  July-October, 1998, devoted to background research in connection with this 4-state strategy on the interaction between the Commerce Clause, the 21st Amendment, and the Webb-Kenyon Act, as well as standing, jurisdiction and pleading issues common to all four cases.

b)  January-February, 2000, devoted to revising the legal strategy for the three remaining cases in light of the District  Court's decision and the State's appellate brief in Bridenbaugh v. O'Bannon.

c)  September, 2000, during which the strategy for the three remaining cases was further revised in light of the 7th Circuit's negative decision in Bridenbaugh v. O'Bannon.

d)  Meetings in November, 2001, January, 2003, May, 2003, and October, 2003, at which plaintiffs' lead counsel met with various attorneys involved in related litigation and/or with experience in Supreme Court litigation to plan Supreme Court strategy

when it was uncertain which case or cases (if any) would be selected by the Court for

review.  These meeting are often referred to as "wine summits" in the billing records.

(Ex. 1, Tanford Aff ¶ 21).

Throughout the case, plaintiffs' lead counsel have been Robert D. Epstein and James A.

Tanford.  They have associated with three other attorneys at various stages:

a)  David Whitaker served as local counsel in the early stages of the case before the

District Court and assisted in discovery.  He devoted 51.2 hours to the case from March,

2000, to December, 2001.  (Ex. 8, Whitaker Aff.).

b)  Jeffrey Marchal is an associate attorney in Mr. Epstein's office.  He spent 11.3 hours

assisting Mr. Epstein from March-July, 2000, with preparing background legal

memoranda.  (Ex. 10, Marchal Aff.).  His time sheets erroneously report the year as

2003.

c)  Kathleen Sullivan, Dean of the Stanford Law School, presented the actual argument

before the Supreme Court in December 2004.   She expended 96.0 hours in preparation

and presentation of the argument.  (Ex. 12, Sullivan Aff.).  This represents time spent

after reviewing the briefs and record and coming up to speed on the case.  No time has

been reported for background work that would be redundant of time already spent by the

lead attorneys.

(Ex. 1, Tanford Aff ¶ 24).

The Coalition for Free Trade ("CFT") is a trade association representing California wineries

that promotes direct sales and shipments of wine.  CFT hired Kenneth Starr at Kirkland & Ellis

as its counsel to coordinate legislative, public relations, and amicus strategy for promoting direct shipping.  Mr. Starr is now the Dean at Pepperdine Law School.  While this case was in the lower courts, Dean Starr and his associates at Kirkland & Ellis worked exclusively for CFT, although CFT paid for their time to conduct several moot courts for plaintiffs' attorneys as they prepared for oral argument in the Courts of Appeals.  Much of the time spent by CFT's attorneys was helpful to plaintiffs, but none of this time has been billed in this case (Ex. 1, Tanford Aff ¶ 25), because time spent on behalf of an amicus is generally not recoverable even though it benefits the plaintiffs.  *Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003) (an amicus is not a prevailing party).

However, when the case went to the Supreme Court, the plaintiffs with the consent of CFT, asked Dean Starr and his associates to assist them directly in preparing the briefs and arguments in the Supreme Court.  Dean Starr is a former Solicitor General of the United States, and his associates were former Supreme Court clerks, and thus they possessed special expertise in the procedures and practices of the Supreme Court.   During this time, Dean Starr and his associates also continued to provide services to CFT for public and political relations, and coordination of amicus briefs.  Unfortunately, because of a computer problem, Kirkland and Ellis has been able to supply only a single set of time records for both the work done for plaintiffs and the work done for CFT during 2004-2005.  Those time records, submitted as Exhibit 15, show a total of 737.6 hours worked.  Lead counsel have gone carefully through their time records, and plaintiffs are requesting compensation for only 199.75 of those hours for work done directly at their request to assist in preparing the case for the Supreme Court, as follows (Ex. 1, Tanford Aff ¶ 26):

a)  Dean Starr expended 167.25 hours, of which 53.75 are chargeable to this case. These are the entries for 6/1, 6/25, 6/26, 6/27, 7/17, 7/30, 9/20, 9/22, 10/12, and 11/12, where his time records unambiguously indicate that he was assisting us in the brief and argument preparation.   Also included is an entry for 9/9 indicating he was working with CFT lawyers, when in fact he was meeting with lead counsel in a Supreme Court strategy session.  Plaintiffs have included fifty percent of the 19.5 hours recorded on 6/4, 6/8, 6/9, 6/14, and 7/16, for which his time records do not differentiate between work done for plaintiffs and work done for CFT.  *See Rogers v. Kelly*, 886 F.2d 997, 1001 (8th Cir. 1989) (if time records do not distinguish compensable time from noncompensable time, amount should be reduced).  The remaining 103.75 hours of his time when he was working for CFT are not included.

b)  Kannon Shanmugan expended 93.5 hours, of which 89.0 are compensable.  Mr. Shanmugam was Dean Starr's senior associate and an expert in Supreme Court procedures.  80 hours were billed from 3/1/04 to 4/5/04 for preparing the Opposition to Certiorari, and 3.5 hours on 6/9 to prepare a response to the states' motion to realign the parties.   Mr. Shanmugam did this work at our request, and the work did not duplicate anything done by lead counsel Epstein and Tanford.  Another 5.5 hours were billed on 6/15-6/16 for reviewing a draft of the merits brief, which is also compensable.  Mr. Shanmugam was a former law clerk to Justice Scalia, and was asked by plaintiffs to provide feedback on how he thought Justice Scalia would react to our arguments. Plaintiffs have written off 4.5 hours expended on 9/6 to review and rewrite a footnote as

7

excessive.

c)  Steven Engel and Susan Engel expended a total of 224.40 hours, of which 66.75 hours are compensable.  The Engels are also associates of Mr. Starr, who took over when Mr. Shanmugam left Kirkland & Ellis for the Solicitor General's office.  From 8/12 to 8/27 they spent 15.5 hours reviewing amicus briefs filed on behalf of the state.  From 9/17 to 9/29 they spent 35.75 hours working on the final draft of the merits brief.  From 10/8 to 10/18 they spent 15.5 hours preparing a response to a motion for divided and re-allocated argument.  This work was done at plaintiffs' request and does not duplicate work done by lead attorneys Epstein and Tanford.  The remaining 157.65 hours is not included in the fee request for a variety of reasons.  From 8/12 to 8/29 they expended 15.25 hours to come up to speed on the case, which is redundant of time spent by other attorneys.  From 8/30 to 9/6, they spent 61.5 hours preparing their own draft of the merits brief, which was redundant of the time spent by lead attorneys Tanford and Epstein and was unnecessary.   On 9/9, 10/1. 10/13, 10/25, 10/28, and 11/5, they spent 25.15 hours conferring with or accompanying Mr. Starr, which time is excessive.  From 12/1 to 12/6, they spent 55.75 hours in connection with public relations and political work on behalf of CFT.

d)  Jennifer Atkins recorded a total of 118.25 hours, none of which are included in the fee petition.  Ms. Atkins was a first-year associate at Kirkland & Ellis.  The bulk of her time was devoted to work done for CFT on various amicus briefs.  The few hours she devoted to plaintiffs' brief on the merits was redundant of time spent by more senior

8

associates and by lead counsel, and so must be written off as unnecessary.

e)  Kenneth J. Sturek, Erin Morrow, Jason P. Hernandez, Joshua Lipshutz, Andrew S. Oldman, and Matthew S. Halloran collectively expended 121.95 hours, none of which are included in the fee petition.  They were law student summer clerks working at Kirkland and Ellis doing research and preparing memoranda that duplicated similar background research done by lead counsel, and so their time must be written off as redundant.

f)  Kirkland & Ellis' Legislative Branch spent 0.5 hours on the 21st Amendment on 7/30.  The work is not explained, and has not been included.

g)  Edward W. Warren and Eric B. Wolff expended 11.75 hours on 12/2 and 12/3, of which none is compensable.  This was work done for the amicus CFT.

(Ex. 1, Tanford Aff ¶ 26).

Initially, plaintiffs planned that Prof. Tanford would present the argument in the Supreme Court.  He worked on the argument from 9/30/2004 to 11/10/2004, devoting 68.7 hours to that preparation, which consisted primarily of going through the 13 briefs filed by the defendants and their amici, identifying every argument and legal point made therein, and preparing a concise response.  On November 10, after an extensive moot court at which both Prof. Tanford and Dean Sullivan presented arguments, and on the advice of several experienced Supreme Court advocates in attendance, the plaintiffs decided to ask Dean Sullivan to present the actual argument.  Sullivan was the Dean of the Stanford Law School, a friend of several Supreme Court Justices, the co-author of the leading Constitutional Law casebook, and had appeared several

times before the Court.  Prof. Tanford turned over his extensive argument notebook to Dean Sullivan, and she used those notes as the basis of her own argument preparation.  Prof. Tanford continued to assist her in preparation as needed, and attended the argument with her to handle the record and briefs, prepare rebuttal notes, and act as her understudy in case she became ill.  To avoid the problem of charging for duplicate work, plaintiffs have allocated the time as follows:  Prior to the November 10th decision to substitute Dean Sullivan, plaintiffs have submitted only the hours for Prof. Tanford's preparation and not for Dean Sullivan's.  Following November 10th, plaintiffs have submitted only Dean Sullivan's hours, other than for Prof. Tanford's attendance at oral argument itself.  (Ex. 1, Tanford Aff ¶ 27).

The argument in the Supreme Court was attended by most of the attorneys who had worked on the case -- Epstein, Tanford, Whitaker, Sullivan, Starr, and the Engels.  Dean Sullivan presented the argument, assisted by Prof. Tanford.  Plaintiffs have submitted the hours and travel expenses of only the three primary attorneys, Tanford, Epstein, and Sullivan. (Ex. 1, Tanford Aff ¶ 28).

Throughout the case, it has been the responsibility of Mr. Epstein to handle the coordination among more than twenty attorneys, staff, consultants, and wine industry representatives involved in various aspects of the case.  It was also his responsibility to find witnesses and prepare evidentiary affidavits in support of summary judgment from people in the wine business.  He also handled all client contacts, including keeping them informed about the progress of the case as required by the Rules of Professional Conduct, and assist them in responding to discovery requests.   All this required that he devote substantial amounts of time to correspondence, emails,

telephone calls and conference calls. Because many of the attorneys, consultants, witnesses, and the winery clients lived in California, substantial travel was also needed. (Ex. 4, Epstein Aff. ¶¶ 12-13).

The Michigan Beer & Wine Wholesalers' Association intervened as a defendant in the District Court, and participated fully in the case at summary judgment, on appeal to the Sixth Circuit, and before the Supreme Court. Most of the time, they have simply replicated arguments raised by the state defendants, and plaintiffs have saved time and expense whenever possible by filing joint responses and replies to briefs filed by both the Wholesalers and the State Defendants. However, plaintiffs have identified 50.5 hours of legal time and 12 hours of travel time that were devoted exclusively to responding to motions and briefs filed separately by the Wholesalers, and they also estimate that the wholesalers' presence added approximately 50 hours to the time that would otherwise have been needed to respond to the briefs filed by the state officials alone. (Tanford Aff., Ex. 1 at ¶ 32).

## II. ARGUMENT

## A. PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES

Plaintiffs are prevailing parties in a federal civil rights case that was brought pursuant to 42 U.S.C. § 1983. As such, they are entitled to an award of reasonable attorneys' fees under 42 U.S.C. § 1988(b). *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). Section 1988 provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title... , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

Although the statute speaks of "discretion," the United States Supreme Court has established that

a prevailing plaintiff is entitled to fees unless the defendants establish "special circumstances" which would make the award of fees unjust. *Hensley v. Eckerhart*, 461 U.S. 424, 428 (1983). Section 1988 provides for attorneys' fees in all Section 1983 actions without regard to the type of relief sought or the federal claim raised. *Busche v. Burkee*, 649 F.2d 509 (7th Cir. 1981); *Haley v. Pataki*, 106 F.3d 578 (2nd Cir. 1997). It is well established that suits alleging violations of the commerce clause, such as this one, may be brought under Section 1983 and support an award of attorneys fees. See *Dennis v. Higgins*, 498 U.S. 439 (1991).

**B. ATTORNEYS' FEES ARE DETERMINED BY A "LODESTAR" METHOD THAT MULTIPLES THE HOURS REASONABLY EXPENDED TIMES A REASONABLE HOURLY RATE.**

To calculate reasonable attorneys' fees, the district court in most cases should use the "lodestar" method set forth in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986) (citations omitted):

> We first addressed the question of the proper manner in which to determine a "reasonable" attorney's fee in *Hensley v. Eckerhart*, .... "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward...." We further refined our views in *Blum v. Stepson*, 465 U.S. 886 (1984) [and] found that "when ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product *is presumed* to be the reasonable fee" to which counsel is entitled. Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts.

The Sixth Circuit has summarized the proper calculation of attorneys' fees as follows:

> A trial court, in calculating the "reasonable hourly rate" component of the lodestar computation, should initially assess the "*prevailing market rate in the relevant community.*"  The Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction;  thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge.

*Adcock-Ladd v. Secretary of Treasury,* 227 F.3d 343, 349-50 (6th Cir. 2000) (citations omitted).

*See also Building Service Local 47 Cleaning Contr. Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (well settled that "lodestar" approach is proper method for determining attorneys' fees; strong presumption that lodestar represents a reasonable fee).

The trial judge may, within limits, adjust the "lodestar" to reflect relevant considerations peculiar to the particular case.  The factors which the district court may consider, either in determining the basic lodestar fee or enhancing it in unusual cases (sometimes called "multipliers"), include the twelve listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974):

> (1) the time and labor required by a given case;  (2) the novelty and difficulty of the questions presented;  (3) the skill needed to perform the legal service properly;  (4) the preclusion of employment by the attorney due to acceptance of the case;  (5) the customary fee;  (6) whether the fee is fixed or contingent;  (7) time limitations imposed by the client or the circumstances;  (8) the amount involved and the results obtained;  (9) the experience, reputation, and ability of the attorneys;  (10) the 'undesirability' of the case;  (11) the nature and length of the professional relationship with the client;  and (12) awards in similar cases."

*Adcock-Ladd, supra,* 227 F.3d 343, 349-50 n.8; *Barnes v. City of Cincinnati*, 401 F.3d 729, 745-

13

46 (6th Cir. 2005) (collecting cases approving multipliers and enhancements when difficult and novel cases are undertaken that achieve excellent results and break new legal ground). The Sixth Circuit has also adopted one other factor: (13) the closeness of a case on its merits. If the case is close on the merits, it tends to justify hiring particularly skilled attorneys and spending more substantial amounts of time than required in "routine" cases. *Hamlin v. Charter Township of Flint*, 165 F.3d 426, 437-38 (6th Cir. 1999). And, where "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Adcock-Ladd* at 349-50.

The present case went to the Supreme Court, which shows that this was a novel and difficult case. In the Supreme Court, plaintiffs prevailed by a five-to-four vote, demonstrating that this case was close on the merits and required substantial time by the attorneys. The broad scope of the majority opinion demonstrates that plaintiffs obtained excellent results. All these factors justify the Court in awarding an hourly rate at the top of the range of prevailing rates and/or applying a multiplier that will result in a fully compensatory fee for the time and effort spent by plaintiffs' attorneys. *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2004). The Supreme Court has held that the more difficult the case, the higher the lodestar, to reflect the higher hourly rate of attorneys especially skilled and experienced. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992).

When two or more attorneys work on a case, they are entitled to compensation for time spent consulting with each other that is reasonably proportionate to their total hours. Although the Court may deduct for obvious double-billing and padding, complicated cases worked on by multiple attorneys will require that they occasionally consult with each other. *See Glover v.*

14

*Johnson*, 138 F.3d 229, 252 (6th Cir. 1998).  The test is "whether, at the time the work was

performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v.*

*Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

Fees awarded to public interest and pro bono lawyers, including law professors, are

calculated the same way as fees to lawyers in private practice.  *See Board of Trustees of the Hotel*

*& Rest. Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998); *Ramos v. Lamm*,

713 F.2d 546, 551 (10th Cir. 1983).

**C.  IN THIS CASE, PLAINTIFFS' LODESTAR ATTORNEYS' FEE REQUEST IS
REASONABLE**.

Plaintiffs have requested that they be awarded $400.00 an hour as a base lodestar rate for the

services of their two lead attorneys, Robert D. Epstein, an experienced litigator with special

expertise in the wine industry, and James A. Tanford, a law professor from Indiana University

with special expertise in constitutional litigation.  Both have been in practice for more than 25

years and have unique expertise relevant to this case.  They are or have been counsel of record in

fourteen other cases challenging the constitutionality of wine distribution laws, and they designed

and directed the litigation strategy that took this case to the Supreme Court.  (Ex. 1, Tanford Aff

¶¶ 1-20; Ex. 4, Epstein Aff. ¶¶ 1-9).

Plaintiffs request $400.00 an hour for Kathleen Sullivan, former Dean of the Stanford Law

School with special expertise in Constitutional Law and Supreme Court arguments.  She has

been in practice for 23 years and has argued many times before the Supreme Court.  Her usual

billable rate in California is $500.00 per hour, but Plaintiffs acknowledge that they are entitled to

an award of fees only based on prevailing rates in Detroit. (Ex. 12, Sullivan Aff.).  *Adcock-Ladd,*

*supra,* 227 F.3d at 349-50.

Plaintiffs request $500.00 an hour for Kenneth Starr.  He is a former Solicitor-General of the United States and federal court of appeals judge, and is currently Dean of the Pepperdine Law School.  He has a specialty practice and special expertise in Supreme Court litigation, and usually bills his time in Washington, D.C., at $625 an hour or more, (see Ex. 15, Kirkland & Ellis Time Rec.).  Plaintiffs acknowledge that they are only entitled to an award of fees based on prevailing rates in Detroit, but because of Starr's unique prestige as a former Solicitor-General, Plaintiffs assert that he is entitled to be compensated at the highest hourly rate for Detroit.

Plaintiffs have requested $300 an hour for David Whitaker, an experienced civil rights litigator who served as local counsel (Ex. 8, Whitaker Aff.), and $250 an hour for the associate attorneys who worked under the supervision of Mr. Epstein or Mr. Starr.

Plaintiffs have supported the reasonableness of these hourly rate requests with the affidavits of their attorneys explaining their experience, expertise, and credentials (Exs 1, 4, 8, and 12), and with affidavits from seven experienced lawyers from the Detroit area establishing that the prevailing hourly rate for complex federal litigation charged by experienced attorneys ranges from $300-600 per hour, for local counsel is $250-300 per hour, and for associates is $180-250 per hour.  (Exhibits 16-22).

Although this case was commenced in 2000, it is well settled that courts award fees based on current rather than historical hourly rates, to compensate for the delay in payment.  *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005).

**D.  THE TOTAL NUMBER OF HOURS EXPENDED BY PLAINTIFFS' ATTORNEYS IS REASONABLE AND DEMONSTRATES GOOD BILLING JUDGMENT**

Plaintiffs have requested an award of attorney's fees for 2176.55 hours of legal work.  The affidavits and time records submitted as exhibits 1-15 show that plaintiffs' attorneys devoted approximately 160 hours to preliminary fact and legal investigation, 80 hours to discovery, 420 hours to ten pretrial motions including five dispositive motions, 300 hours to researching, briefing and arguing the case in the Sixth Circuit, 1100 hours for proceedings and argument in the Supreme Court, and 90 hours on negotiations with state officials and final proceedings in the District Court.  These numbers are approximate because it has not always been possible to assign time expended to one category rather than another where they overlap.

An applicant for attorneys fees is required to exercise "billing judgment" with respect to the number of hours worked and billed.  Billing judgment consists of winnowing hours actually expended down to hours reasonably expended that would be billed to a client, *Praseuth v. Rubbermaid, Inc.,* 406 F.3d 1245, 1257 (10th Cir. 2005).  The applicant must write off unproductive, excessive or redundant hours.  *Walker v. U.S. Dept. of H.U.D.*, 99 F.3d 761, 769-70 (5th Cir. 1996).  Plaintiffs have exercised such billing judgment.  Plaintiffs' two primary attorneys, Epstein and Tanford, reviewed all the time records submitted and used billing judgment to reduce the total number of hours by approximately 15% (see pages 6-10, supra) to eliminate time spent by associates that duplicated the work of lead counsel, and time devoted to meetings and conferences attended by more than two attorneys.  (Ex. 1, Tanford Aff., ¶¶ 21, 26-30; Ex. 4, Epstein Aff., ¶ 16). They also have not billed approximately 20 hours of time spent in preparing this fee petition.  The 2176.55 hours that remain are reasonable.

At the trial stage, considerably more time than usual was needed to find and interview potential witnesses among small winery owners, because they are located primarily in California, and were reluctant to participate for fear of retaliation against them by wholesale distributors. (Ex. 4, Epstein Aff. ¶ 15).  Considerably more time than usual was needed to conduct the background legal research necessary to draft the complaint, because this was a novel and difficult area of constitutional law that lacked clear precedent.  (Ex. 1, Tanford Aff. ¶ 33).  Similarly, more time than usual was needed on the dispositive motions because this was a novel and difficult area of constitutional law that lacked clear precedent, and because multiple dispositive motions were filed by both the State defendants and the intervening defendants.  (Ex. 1, Tanford Aff. ¶¶ 22, 34).

In proceedings before the Supreme Court, plaintiffs' attorneys time can be divided approximately as follows:  100 hours to preparing a memorandum in opposition to certiorari and other motions, 750 hours preparing the brief on the merits before the Supreme Court, and 200 hours to preparing for and presenting the oral argument in the Supreme Court.   Because the Supreme Court also granted certiorari in a related case, *Swedenburg v. Kelly*, 358 F.3d 223 (2d Cir. 2004), and consolidated the two cases for argument, about 30 hours were also devoted to coordinating the briefing and argument strategies of the two cases.  (Ex. 1, Tanford Aff. ¶¶ 29, 35).  This time expenditure on a close and difficult case presenting a novel issue to the Supreme Court in an area with little precedent is reasonable.

Finally, plaintiffs' attorneys have devoted about 90 hours since the Supreme Court decision to preparing the motion for judgment, responding to the state's remedy argument, negotiating

with State officials, and preparing the fee petition.   Given the complexity of the case, the number

of attorneys who worked on the Supreme Court brief, and the fact that the defendants elected to

dispute the wording of the court's final order, which required briefing a new substantive issue

(remedy) and a hearing, the time was reasonable.

**E.  THIS IS ONE OF THOSE RARE AND UNIQUE CASES IN WHICH THE BASE LODESTAR RATE SHOULD BE ENHANCED BY A MULTIPLIER**

The Supreme Court said in *Pennsylvania v. Delaware Valley Citizens' Council for Clean*

*Air*, 478 U.S. 546, 566 (1986) that although the base lodestar rate is presumed to be

thereasonable fee to which counsel is entitled, multipliers may still be used in unusual cases:

> [U]pward adjustments of the lodestar figure are still permissible ... in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts.

The Sixth Circuit, following *Pennsylvania v. Delaware Valley Citizens' Council*  and *Blum*

*v. Stenson,* 465 U.S. 886, 895 (1984), has held that multipliers are appropriate in unusually

difficult cases that produce extraordinary results.

> [M]ultipliers, or fee enhancements to the Lodestar calculation, are permissible in some cases of "exceptional success."

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005).  Among the factors to be

considered are the novelty and difficulty of the questions, the skill requisite to perform the legal

service properly; and the excellence of the results obtained.  *Id.* at 745-46.  The Sixth Circuit has

held that the District Court must determine whether a case is rare and exceptional before

declining to award a multiplier.  *Geier v. Sundquist*, 372 F.3d 784, 793-94 (6th Cir. 2004).

In *Barnes,* the Sixth Circuit approved a multiplier of 1.75 applied to the total fee award

because:

> The district court provided a clear and concise explanation for its decision, reasoning that a multiplier was appropriate because of the "novelty and difficulty" of this question and because of the "immense skill requisite to conducting this case properly." The court found the result achieved was extraordinary and the case was highly controversial, based on the affidavits of two Cincinnati attorneys who stated that few lawyers locally or nationally would take such a case.

*Id.* at 746.  It cited with approval other cases in which multipliers had been awarded for the

exceptional results achieved.  See *Guam Soc. Of Obstetricians & Gynecologists v. Ada,* 100 F.3d

691, 697 (9th Cir. 1996)(200 percent multiplier upheld because of the undesirability of the case

and the exceptional nature of the case); *McKenzie v. Kennickell,* 277 U.S. App. D.C. 297, 875

F.2d 330, 338-39 (D.C. Cir. 1989)(awarding twenty five percent enhancement for exceptional

results and where counsel "remained active in the litigation over a period of fifteen years");

*Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001)(awarding 150 percent

multiplier for solo practitioner who achieved exceptional results by taking an unpopular case

others turned down and bringing to light a previously unrecognized cause of action); *Quinn v.*

*Nassau County Police Dep't,* 75 F. Supp. 2d 74 (E.D. N.Y. 1999)(awarding ten percent multiplier

in employment discrimination case due to ground breaking nature of case); *Hollowell v. Gravett,*

723 F. Supp. 107, 110 (E.D. Ark. 1989) (awarding seventy five percent quality enhancement

where plaintiff's counsel prepared the case thoroughly and provided superb representation "under

the most adverse circumstances."); *Shakman v. Democratic Org.,* 677 F. Supp. 933, 945 (N.D.

Ill. 1987) (awarding a one third quality enhancement in a class action where the court noted the

case had great significance and plaintiffs' counsel showed "imagination and creativity").

This case one of those rare and unusual cases that presented a novel and difficult question of law, required unusual legal skill and ability, and resulted in a groundbreaking Supreme Court decision that has had far-reaching legal and social ramifications.  It broke new legal ground and established new legal precedent.  Already a dozen states have rewritten their wine importation and distribution laws to permit out-of-state wineries to sell and ship wine directly to consumers, and federal judges in Massachusetts, Pennsylvania, Ohio, and Florida have struck down wine laws in those states based on this decision.[1]  It has opened the markets in half the country to 2500 small wineries without wholesale distributors who were previously foreclosed from them. It has enabled millions of wine consumers to obtain wine directly from out-of-state wineries that was previously unavailable in their states.  (Ex. 23, Seff Aff.; see also Ex. 1, Tanford Aff ¶¶ 15, 33-34; Ex. 4, Epstein Aff. ¶ 7).  This fits the meaning of "exceptional results" by anyone's definition, so applying a multiplier of 1.5 to the lodestar rates of the four principal attorneys who designed and executed the Supreme Court strategy is appropriate.  (See Ex. 22, Miller Aff.) (testifying to multipliers in the Eastern District of Michigan).

## F.  ATTORNEYS FEES MAY BE AWARDED AGAINST PRIVATE PARTIES WHO INTERVENED AS DEFENDANTS, AS WELL AS AGAINST STATE OFFICIALS.

This case presents an unusual issue in the awarding of attorney's fees.  Defendants in this case include a private trade association, Michigan Beer & Wine Wholesalers, who voluntarily intervened as a defendant.  In civil rights suits, the usual defendants are state officials, who are

---

[1]See *Stonington Vineyards v. Jenkins*, 1:05cv10982 (D. Mass); *Stahl  v. Taft*, 2:03cv00597 (S.D. Ohio); *Cutner v. Newman*, 2:05cv03007 (E.D. Pa); *Bainbridge v. Bush*, 8:99-CV-2681 (M.D. Fla.).

21

liable for attorneys fees if Plaintiffs prevail.  In this case, the court will have to decide whether some portion of the attorney fee award should be borne by the intervening defendant.  There is scant precedent on this issue, but nothing in the Civil Rights Attorney's Fee Awards Act precludes requiring an intervening defendant to pay part of the costs of attorneys' fees.  Section 1988(b) appears to leave the matter of assessing attorneys' fees to the court's discretion:

> (b) *Attorney's fees.*  In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

Fees are analogous to "costs" under Fed.R.Civ.P. 54(d), which may be awarded jointly and severally or apportioned by the court when there are several defendants.  An intervening defendant is treated like any other defendant and is liable for plaintiffs' attorneys' fees if plaintiffs prevail. *Charles v. Daley*, 846 F.2d 1057, 1063-64 (7th Cir. 1988) (reviewing legislative history of Act).  *See also  S & R Wrecker Service, Inc. v. Mecklenburg County, N.C.*, 652 F.Supp. 527 (W.D.N.C.1987) (plaintiff entitled to award of attorney fees against intervenor); *Robideau v. O'Brien*, 525 F.Supp. 878 (E.D.Mich.1981) (attorney fees could be awarded in favor of plaintiffs against intervenors).

In his affidavit, James A. Tanford states that he devoted 50.5 hours of legal time and 12 hours of travel time preparing briefs are presenting arguments devoted solely to responding to briefs and motions filed by the Intervenors.  He also estimates that the presence of the intervenors as parties to this case complicated the legal work of the Plaintiffs' attorneys and caused them to expend approximately 50 additional hours of work on the case generally that would not have been spent had the Intervenors not been parties.  (Ex. 1, Tanford Aff. ¶ 32).

22

## G.  THE PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF COUNSELS' EXPENSES

Plaintiff's seek reimbursement for their attorneys' expenses in the amount of $40,220.00,

incurred directly in connection with prosecuting the case.  These are travel expenses connected to

the need to develop facts and locate appropriate witnesses from the California wine industry, to

attend the argument in the 6th Circuit, to Supreme Court proceedings, and to lead counsel

traveling from Indiana to Detroit.  These are more fully explained in the affidavits of Mr. Tanford

(Ex. 1 ¶ 29) and Mr. Epstein (Ex. 4  ¶ 15).  Out-of-pocket expenses recoverable under Section

1988 include those costs which would normally be charged to fee paying clients, such as travel

time at a reduced rate of $100 per hour, itemized air fare and overnight hotel costs while actively

involved in the litigation of the case.  *Planned Parenthood of Central N.J. v. Attorney Gen.*, 297

F.3d 253, 267-68 (3d Cir. 2002) (suggesting that a reduced rate of $100 per hour may be

appropriate for travel time); *Robins v. Scholastic Book Fairs*, 928 F.Supp. 1027 (D.Or. 1996),

*aff'd* 116 F.3d 485; *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish

School Bd.*, 919 F.2d 374 (5th Cir. 1990).   In this case, it was reasonable for plaintiffs to retain

Mr. Epstein and Prof. Tanford despite the fact that they would have to travel to and from Detroit,

because of their expertise and experience in this unique area of law and because the winery

plaintiffs were from out of state anyway.

## H.  ATTORNEYS' FEES ATTRIBUTABLE TO APPEAL, INCLUDING PROCEEDINGS BEFORE THE SUPREME COURT, ARE PROPERLY AWARDED BY THE DISTRICT COURT AS PART OF THE RELIEF GIVEN TO PREVAILING PLAINTIFFS.

Attorneys' fees attributable to appeal, including proceedings before the Supreme Court, are

properly awarded by the District Court as part of the relief given to prevailing plaintiffs.  They

23

are not awarded by the appellate courts, because the determination of a reasonable fee is a matter of discretion based on evidence as to prevailing hourly rates and time spent by the attorneys, which is "pragmatically left to the forum of the trial court." *Kelly v. Metropolitan Co. Bd. of Ed.*, 773 F.2d 677, 682 (6th Cir. 1985); *Smith v. Detroit Bd. of Ed.*, 728 F.2d 359, 359-60 (6th Cir. 1984).

## I. HEARING NOT REQUIRED

The court is not generally required to hold a hearing regarding attorneys' fees; *DeJesus v. Banco Popular de P.R.*, 951 F.2d 3, 7 (1st Cir. 1991), *Carey v. Crescenzi*, 923 F.2d 18, 22 (2d Cir. 1991); unless there is a factual dispute, e.g., whether plaintiff is a prevailing party. *See Church of Scientology v. U.S. Postal Serv.*, 700 F.2d 486, 494 (9th Cir. 1983).

## III. CONCLUSION

The Plaintiffs are prevailing parties as against the defendants and intervening defendants. As such, they are entitled to recover their reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 in the total amount of $1,280,386.

Respectfully submitted:

Dated:  December 8, 2005          Attorneys for Plaintiffs

 /s/  **James A. Tanford**
James A. Tanford (16982-53)
Indiana University School of Law
211 S. Indiana Av
Bloomington IN 47405
(812) 855-4846

Robert D. Epstein (6726-49)
Epstein Cohen Donahoe & Mendes
30 S. Meridian St., Ste 505

Indianapolis IN 46204
(317) 639-1326


David A. Whitaker (P40299)
3940 Audubon Rd
Detroit MI  48224
(313) 224-4684

25

## CERTIFICATE OF SERVICE

I certify that on December 8, 2005, I electronically filed the foregoing motion and memorandum, together with all exhibits, with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

J.Michael Lockman -- lockmanm@michigan.gov

Donald S. McGehee -- mcgeheed@michigan.gov

Ray J. Foresman, rforesman@winninghamcote.com

Anthony S. Kogut, akogut@winninghamcote.com

/s/  **James A. Tanford**
James A. Tanford (16982-53)
Indiana University School of Law
211 S. Indiana Av
Bloomington IN 47405
(812) 855-4846

26